Sara PARAVATI and Joseph Paravati, her husband

v.

PORT AUTHORITY OF ALLEGHENY COUNTY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2006.

Decided Dec. 29, 2006.

Gregory A. Evashavik, Pittsburgh, for appellant.

Fred C. Jug, Jr., Pittsburgh, for appellees.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge and COHN JUBELIRER, Judge.

OPINION BY Judge SMITH–RIBNER.

The Port Authority of Allegheny County (Port Authority) appeals from an order of the Court of Common Pleas of Allegheny County that denied the Port Authority's motion for post-trial relief and confirmed an award of $15,000 to Sara Paravati from the Port Authority for uninsured motorist benefits. The Port Authority questions whether sovereign immunity bars a claim against it for uninsured motorist benefits and whether a plaintiff is prohibited from "stacking" uninsured motorist benefits from a self-insured entity with uninsured motorist benefits from the plaintiff's own automobile insurance policy.

I

On July 20, 2000, Sara and Joseph Paravati were passengers on a Port Authority bus. A pickup truck ran a stop sign and drove into the path of the bus. The bus driver made an emergency stop to avoid a collision, and the pickup truck fled the scene. Sara Paravati was thrown to the floor and suffered injuries. A jury awarded $50,000 to Sara Paravati in a trial in the Paravatis' actions for negligence against the Port Authority and for uninsured motorist benefits. The unidentified driver was found 100% negligent and the bus driver was found not negligent.

Sara Paravati was a named insured on a household automobile insurance policy provided by State Farm Insurance. Counsel represented to the trial court that State Farm had paid $15,000 in *underinsured* motorist benefits to Sara Paravati because it recognized that the Port Authority's uninsured motorist coverage was insuffi-

cient to cover her injuries.[1] The court molded the $50,000 award to $15,000 in favor of Sara Paravati and against the Port Authority to reflect the limits of the Port Authority's uninsured motorist liability for a single injury.

The Port Authority filed a motion for post-trial relief reasserting its issues of the bar of sovereign immunity and the prohibition against stacking, which the trial court denied. The court first pointed out that the Port Authority is self-insured pursuant to the provisions of Section 1787 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1787, relating to self-insurance. Section 1787(a)(3) requires a self-insured entity to "[p]rovide uninsured motorist coverage up to the limits set forth in section 1774 [of the MVFRL, *as amended,* 75 Pa.C.S. § 1774]."[2] Before codification of this requirement, the Supreme Court held in *Modesta v. Southeastern Pennsylvania Transportation Authority,* 503 Pa. 437, 469 A.2d 1019 (1983), that a transportation authority, as a self-insurer, had to provide uninsured motorist coverage. The Port Authority argued that because it was found to be free of negligence sovereign immunity barred recovery, and it relied upon *Donnelly v. Southeastern Pennsylvania Transportation Authority,* 708 A.2d 145 (Pa.Cmwlth.1998), stating that a person seeking to impose liability on a Commonwealth party must establish a negligent act. The court noted that the case concerned injury to a contractor's construction worker on a jobsite and issues of

"special danger" or "peculiar risk" but not the MVFRL or self-insurance.

The trial court's research revealed no case in which a transportation authority argued that because it was not negligent sovereign immunity prevented it from owing uninsured motorist benefits to an injured passenger. In *Brissett v. Southeastern Pennsylvania Transportation Authority,* 355 Pa.Super. 508, 513 A.2d 1037 (1986), the transportation authority was held to be primarily liable for uninsured motorist benefits under the excess policy clause of a household policy issued to the plaintiff's son, which result would have been the same under provisions of Section 1733 of the then-new MVFRL, 75 Pa.C.S. § 1733, relating to priority of uninsured motorist benefits. The authority did not raise an issue of sovereign immunity. The court concluded that the goal of effectuating the intention of the legislature would not be served by interpreting the statutes in such a way that the requirement for self-insured transportation authorities to purchase uninsured motorist coverage would be rendered meaningless with respect to them because such benefits would be unrecoverable. The court stated that the purpose of uninsured motorist benefits is to protect innocent parties who are injured as the result of negligence by a party without insurance; they are not related to any fault on the part of the policyholder or self-insurer. Therefore, sovereign immunity did not bar recovery of uninsured motorist benefits.

---

1. N.T. pp. 8–9; Reproduced Record (R.R.) 11a–12a. The transcript of the argument shows that counsel indicated that State Farm paid underinsured motorist benefits.

2. Section 1774 of the MVFRL, relating to payments sufficient to satisfy judgments, provides in part:

**(a) General rule.**—For the purpose of this chapter [the MVFRL] only, judgments shall be deemed satisfied upon the occurrence of one of the following:

(1) When $15,000 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to one person as the result of any one accident.

■ On the issue of stacking, the trial court quoted Section 1787(b) of the MVFRL, 75 Pa.C.S. § 1787(b): "Any recovery of uninsured motorist benefits under this section only shall not be increased by stacking the limits provided in section 1774, in consideration of the ownership or operation of multiple vehicles or otherwise." The court concluded that the plain meaning of this section is to prevent multiple recoveries from a self-insurer because it owns or operates other vehicles that also are required to be covered for uninsured motorist benefits. Further, Section 1733, relating to priority of recovery, provides in subsection (a):

> (a) **General rule.**—Where multiple policies apply, payment shall be made in the following order of priority:
>
> > (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
> >
> > (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

Referring to *Brissett*, the court stated that a self-insurer is required to provide the equivalent of uninsured motorist coverage, and it will be treated under the law as if it had such a policy. Therefore, under Section 1733(a), the Port Authority was primarily responsible to pay uninsured motorist benefits. Moreover, it was inconsequential that Paravati recovered $15,000 in uninsured motorist benefits from her insurer, where the verdict was $50,000 and where she would have been entitled to recover uninsured motorist benefits from her insurer in any event.[3]

## II

■ On the Port Authority's appeal, it first renews its argument based upon its protection by sovereign immunity, noting that its status as a Commonwealth agency entitling it to such protection was established in *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990). It asserts that Section 8522 of the Judicial Code, *as amended*, 42 Pa.C.S. § 8522, provides in subsection (a) that sovereign immunity as a bar to an action for damages against a Commonwealth agency is waived only for damages arising out of a negligent act of a Commonwealth party and falling within the specified exceptions in subsection (b). Here, however, the jury found the Port Authority to be not negligent.

In *White by Pearsall v. School District of Philadelphia*, 553 Pa. 214, 718 A.2d 778 (1998), a minor plaintiff was injured after exiting a school bus when he was struck by a passing car after the bus driver motioned the child to cross. The child and his mother filed an action for damages based upon negligence of the bus driver and also for uninsured motorist benefits. The trial court granted summary judgment to the school district on the ground that the driver's conduct was not within the vehicle exception to local agency immunity. This Court reversed, but the Supreme Court majority agreed that the exception did not apply where the conduct was separate from the actual operation of the motor vehicle. Although the Supreme Court did not discuss uninsured motorist benefits, the Port Authority argues that under *White* they are barred where no immunity exception applies.

In *Gielarowski v. Port Authority of Allegheny County*, 159 Pa.Cmwlth. 214, 632

---

**3.** The Court's review of an order of the trial court denying post-trial motions is limited to determining whether there was an abuse of discretion or an error of law. *Commonwealth by Corbett v. Manson*, 903 A.2d 69 (Pa. Cmwlth.2006).

A.2d 1054 (1993), a plaintiff slipped and fell and was injured after he exited a Port Authority bus. He sued for first-party benefits under the MVFRL (limited to medical benefits, income loss benefits, accidental death benefits and funeral benefits) and argued that a governmental agency that is self-insured for first-party benefits for its vehicles is stripped of immunity defenses. The trial court held that the action was barred by sovereign immunity and that the plaintiff failed to provide notice of the claim within six months as required by statute. This Court affirmed, concluding that under cases such as *City of Philadelphia v. Nationwide Ins. Co.,* 92 Pa.Cmwlth. 20, 498 A.2d 462 (1985), and *Hill v. Port Authority Transit System of Allegheny County,* 125 Pa.Cmwlth. 69, 557 A.2d 430 (1989), *remanded,* 524 Pa. 466, 573 A.2d 1026 (1990) (*Hill I*), the accident must fall within an exception to sovereign immunity for the plaintiff to recover. Finally, the Port Authority asserts that *Modesta* is distinguishable as it was decided in 1983, and the issue of sovereign immunity was not raised because the Southeastern Pennsylvania Transportation Authority (SEPTA) was not recognized as being protected by such immunity until 1986.

The Paravatis respond that the Port Authority's position is contrary to the intent of the legislature and to the basic concept of why uninsured motorist benefits exist. The trial court posed the question at argument as to when uninsured motorist benefits would be paid if they were not paid in this case. In *Modesta* the plaintiff was injured when the bus in which she was riding was struck from behind by an uninsured motorist. The Supreme Court held that the requirement that SEPTA either purchase insurance or self-insure placed it in precisely the same position as a vehicle owner who has purchased a policy of liability insurance: both are required to maintain uninsured motorist coverage under the Act known as the Uninsured Motorists Act, Act of August 14, 1963, P.L. 909, *as amended,* 40 P.S. § 2000.[4] The Supreme Court quoted a statement that the purpose of the Uninsured Motorists Act is to afford financial recompense to persons who are injured through the negligence of motorists who are uninsured and not financially responsible and therefore cannot be made to satisfy a judgment and that the statute must be broadly and liberally construed to accomplish this purpose. *See Johnson v. Concord Mut. Ins. Co.,* 450 Pa. 614, 300 A.2d 61 (1973).

The Paravatis stress that in *Modesta* the negligence of the bus driver was not at issue. The policy behind the Uninsured Motorists Act supports the conclusion that an injured passenger need not establish negligence of the bus driver in order to recover uninsured motorist benefits. Rather, these benefits are recoverable in relation to injuries "arising out of the ownership, maintenance or use of a motor vehicle" and due to negligence of an uninsured. In *White,* they contend, the specific issue reviewed by the Supreme Court was whether the action of a school bus driver who waved his hand to signal a student to cross fell within the motor vehi-

4. The Uninsured Motorists Act provides in part:

(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered ... with respect to any motor vehicle registered ... in this State, unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease....

cle exception. There is no analysis in *White* on the issue of whether a party must establish negligence before proceeding with a claim for uninsured motorist benefits. They note that a claim for first-party benefits was asserted in *Gielarowski*, and the Court focused on whether the slip and fall after exiting the vehicle came within the vehicle exception.

The Paravatis point out that the Port Authority is required by statute to provide uninsured motorist benefits and that Section 1787 of the MVFRL makes no reference to findings of negligence. They cite the principle that where the words of a statute are clear and free from ambiguity, the letter of it is not to be ignored on the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 2 Pa.C.S. § 1921(b); *Springfield Township v. Mellon PSFS Bank*, 586 Pa. 1, 889 A.2d 1184 (2005).

### III

■ The Court is persuaded that under Section 1787 of the MVFRL and the Uninsured Motorists Act the Port Authority is required to provide uninsured motorist benefits and that a party's entitlement to these benefits does not depend upon a finding of negligence by a Port Authority party under the exceptions to immunity enumerated in 42 Pa.C.S. § 8522(b). In *Modesta* the Supreme Court plainly endorsed the concept of uninsured motorist benefits on the part of a transportation authority. Although the Port Authority was not held to be a Commonwealth agency entitled to sovereign immunity until the *Marshall* decision in 1990, the issue there was whether it should be afforded local agency immunity or sovereign immunity, but the cases uniformly hold that where the sovereign and governmental immunity exceptions are identical, their interpretation should be identical as well. *Jones v.*

*Southeastern Pennsylvania Transportation Authority*, 748 A.2d 1271 (Pa.Cmwlth. 2000), *aff'd*, 565 Pa. 211, 772 A.2d 435 (2001).

Another principle of statutory construction that applies in this case is the presumption found in Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1), that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *See Keim v. Department of Transportation, Bureau of Driver Licensing*, 887 A.2d 834 (Pa.Cmwlth.2005). As the trial court perceived, under the Port Authority's interpretation it is required to purchase uninsured motorist coverage or to provide the equivalent of such coverage, but the benefits may never be collected when the Port Authority is not found to be at fault even though an innocent passenger suffers injury due to the negligence of an uninsured driver, to which uninsured motorist coverage is intended to apply. Such a result would be absurd. As cases such as *Modesta* and *Marshall* illustrate, it is not unusual for transportation authorities to be self-insured, and the legislature certainly was aware of that fact when it adopted the requirement of Section 1787(a)(3) of the MVFRL.

Accordingly, the trial court did not err in holding that the legislature did not intend for Section 1787(a)(3) to be rendered meaningless in regard to transportation authorities. In another case filed this same day, the Court has reached the same conclusion that sovereign immunity does not bar a claim for uninsured motorist benefits absent an allegation of negligence by the Port Authority. *See Lowery v. Port Authority of Allegheny County*, 914 A.2d 953 (Pa.Cmwlth.2006).

The second issue concerns the application of the anti-stacking provision of Sec-

tion 1787(b) of the MVFRL.[5] The Port Authority asserts that this provision specifically prohibits stacking of uninsured motorist benefits. Because Paravati acknowledged at trial that she received uninsured motorist benefits from State Farm Insurance of $15,000, the Port Authority contends that its payment of $15,000 to Paravati would constitute stacking in violation of Section 1787(b). The Paravatis counter that the prohibition against stacking "in consideration of the ownership or operation of multiple vehicles or otherwise" indicates that the plain meaning of the statute is to prevent multiple recoveries from one self-insurer because it owns or operates other vehicles that also must be insured. They note that the MVFRL recognizes that payment may come from more than one source, and in Section 1733(a) it provides an order of priority where multiple policies apply, with the first being a policy covering a motor vehicle that was occupied by the injured person at the time of the accident.

The Paravatis also point out that in *Brissett* a passenger, injured on a bus due to the actions of an unidentified driver, applied for and received basic loss benefits under a household automobile insurance policy issued to her son. She applied for uninsured motorist benefits, and the Superior Court concluded that the transportation authority was primarily responsible for such benefits, which result was observed to be consistent with the provisions

of the new Section 1733 of the MVFRL. In the alternative, the Paravatis assert that the Port Authority's stacking argument is an affirmative defense raised for the first time in oral argument before the trial court after the jury was seated, and pursuant to Pa. R.C.P. No. 1032(a) a party waives all defenses and objections not raised either by preliminary objection, answer or reply except those specified in Pa. R.C.P. No. 1030(b) (affirmative defenses of assumption of risk, comparative and contributory negligence).[6]

■■■ Regarding the waiver contention, the Paravatis are correct that the defense of the anti-stacking provision of 75 Pa.C.S. § 1787(b) should have been raised by way of a responsive pleading before trial under Rule 1032(a). It has been held, however, that where a party raises a statutory affirmative defense at a later stage of the proceedings and the trial court considers it, the consideration is treated as approving an amendment under Pa. R.C.P. No. 1033. *Flora v. Moses*, 727 A.2d 596 (Pa.Super.1999). Grants of leave to amend are within the sound discretion of the trial court, but leave should be granted at any stage unless such amendment violates the law or unfairly prejudices the rights of the opposing party. *Frey v. Pennsylvania Elec. Co.*, 414 Pa.Super. 535, 607 A.2d 796 (1992). The trial court reserved ruling on the Paravatis' objection when it was raised, then it disposed of the merits in its

---

5. The general provision relating to stacking of uninsured motorist benefits is found in Section 1738(a) of the MVFRL, 75 Pa.C.S. § 1738(a), which permits stacking of coverages for each vehicle providing uninsured or underinsured motorist coverage for which the injured person is an insured. Subsection (b) permits a named insured to waive coverage providing stacking of these benefits.

6. Rule 1032(a) provides that a party waives all defenses and objections that are not presented by preliminary objection, answer or reply, except a defense not required to be pleaded under Rule 1030(b) and the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or to exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

opinion without discussing waiver, thereby in effect allowing amendment.

 Counsel for the Paravatis stated the following in the initial discussion among counsel and the trial court: "State Farm agreed to compensate her by paying *underinsured* benefits, recognizing that the uninsured motorist coverage of the Port Authority wasn't enough for her injuries." N.T. 8; R.R. 11a (emphasis added). Section 1702 of the MVFRL, *as amended*, 75 Pa.C.S. § 1702, defines "Underinsured motor vehicle" as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." Under Section 1733(a), the first payment is due from a policy covering a motor vehicle occupied by the injured person at the time of the accident. In view of the holding that payment of uninsured motorist benefits is not barred by sovereign immunity, payment under the Port Authority's coverage was required first. A second point, however, is that State Farm did not pay uninsured motorist benefits but rather *underinsured* motorist benefits in anticipation of Sara Paravati's eventual recovery of the statutory limit of $15,000 from the Port Authority.

After its review of the anti-stacking issue, the Court concludes that the recovery by Sara Paravati from State Farm is not a recovery under Section 1787 of the MVFRL. Hence, the award to her from the Port Authority did not constitute stacking of uninsured motorist benefits in violation of Section 1787(b). Because the trial court neither abused its discretion nor committed an error of law in denying the Port Authority's motion for post-trial relief and in confirming the $15,000 award to Sara Paravati for uninsured motorist benefits, the Court affirms the trial court's order.

## ORDER

AND NOW, this 29th day of December, 2006, the order of the Court of Common Pleas of Allegheny County is affirmed.