**Julie LOWERY, an individual, Appellant**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY and Nicole L. Tarr.**

Julie Lowery and Nicole L. Tarr

v.

**Robert Goodman, Annie Pelton, Ronald Raymer, Port Authority Transit a/k/a Port Authority of Allegheny County, and Bob Mentzer Ford, Inc.**

**Appeal of: Nicole L. Tarr.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2006.

Decided Dec. 29, 2006.

Fred Rabner, Pittsburgh, for appellant, Julie Lowery.

Christopher M. Miller, Pittsburgh, for appellee, Nicole L. Tarr.

Gregory A. Evashavik, Pittsburgh, for appellees, Port Authority of Allegheny County and Ronald Raymer.

Sandra S. Neuman, Pittsburgh, for amicus curiae, The Pennsylvania Trial Lawyers Association.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge and COHN JUBELIRER, Judge.

OPINION BY Judge SMITH–RIBNER.

Julie Lowery and Nicole L. Tarr appeal from an order of the Court of Common Pleas of Allegheny County that granted the motion for judgment on the pleadings filed by the Port Authority of Allegheny County (Port Authority) in regard to two of four actions that Lowery and Tarr filed arising out of a collision between a bus in which they were passengers and an automobile. The Court has consolidated these appeals because they arise from a decision on cases that were consolidated before the trial court.

The trial court granted the Port Authority's motion and dismissed claims that Lowery and Tarr initially advanced in separate actions seeking to recover only uninsured motorist benefits from the Port Au-

thority. Lowery questions whether the court erred in granting judgment on the pleadings to the Port Authority and whether the court erred in its determination that Section 8522 of the Judicial Code, *as amended,* 42 Pa.C.S. § 8522, precludes her from seeking and receiving uninsured motorist benefits from coverage mandated to be carried by the Port Authority pursuant to Section 1787(a)(3) of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1787(a)(3). Tarr questions whether the court erred in deciding that she is precluded from recovering uninsured motorist benefits.

I

Complaints filed by Lowery and Tarr alleged that on January 13, 2001, a Port Authority bus operated by Ronald Raymer on which they were passengers collided with a car owned by Bob Mentzer Ford, Inc., leased by Annie Pelton and driven by Robert Goodman, when the car pulled out from a fast food restaurant directly into the path of the bus. Lowery and Tarr both alleged that they suffered severe injuries as a result of the collision. The automobile was not covered by liability insurance. In addition to filing actions against the Port Authority and others alleging negligence, Lowery and Tarr each filed an action against the Port Authority only alleging that the accident was caused by the driver of the automobile without insurance and therefore claiming a right to uninsured motorist benefits that the Port Authority is required to provide pursuant to Section 1787(a)(3) of the MVFRL. The Port Authority filed a motion to consolidate all four actions, which the trial court granted by order of February 23, 2005. The Port Authority later filed a motion for judgment on the pleadings as to the two claims for uninsured motorist benefits.

The trial court reviewed the Port Authority's argument that it is a Commonwealth agency protected by sovereign immunity, *Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990), and that in order to recover from such an agency a plaintiff must satisfy a statutory exception to immunity set forth in 42 Pa.C.S. § 8522. Section 8522(a) provides that immunity is waived as a bar to an action against Commonwealth parties for damages arising out of a negligent act, and Section 8522(b) sets forth nine exceptions under which liability may be imposed against the Commonwealth, which exceptions must be strictly construed. *Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994). The court stated that to avail oneself of an exception to immunity, a plaintiff must first aver and prove a negligent act on the part of the Commonwealth party or its employee. It quoted *Gielarowski v. Port Authority of Allegheny County,* 159 Pa.Cmwlth. 214, 217, 632 A.2d 1054, 1056 (1993), where this Court en banc stated that "a motor vehicle insurance claim against a government agency must satisfy the requirements of the immunity statutes in order for the injured party to recover."

In this case, Lowery and Tarr had not averred that their claims arose from a negligent act on the part of a Commonwealth party that meets one of the exceptions to sovereign immunity. As for the argument that the Port Authority as a self-insured entity is required to provide uninsured motorist insurance coverage on its vehicles by Section 1787(a)(3) of the MVFRL, and that immunity would render that statutory requirement meaningless, the trial court concluded that this was the same argument that was rejected in *Gielarowski* in the context of first-party benefits. There this Court reasoned that the MVFRL and the immunity statutes were

to be construed together, that one does not supersede another and that a motor vehicle insurance claim must satisfy requirements of the immunity statutes for a party to recover. Because Lowery and Tarr failed to allege negligence on the part of the Commonwealth party or its employee as required by Section 8522(a), the trial court granted judgment on the pleadings in the Port Authority's favor.[1]

## II

Section 1731 of the MVFRL, *as amended,* 75 Pa.C.S. § 1731, relating to scope and amount of uninsured and underinsured motorist coverage, provides:

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 [75 Pa.C.S. § 1734] (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

(b) **Uninsured motorist coverage.**— Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor

from owners or operators of uninsured motor vehicles.

Section 1787 of the MVFRL, relating to self-insurance, provides in part:

(a) **General rule.**—Self-insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, deposits, resources or commitments exist such as will satisfy the department that the self-insurer will:

. . . .

(2) Make payments sufficient to satisfy judgments as required by section 1774 [75 Pa.C.S. § 1774] (relating to payments sufficient to satisfy judgments).

(3) Provide uninsured motorist coverage up to the limits set forth in section 1774.[2]

Section 8522 of the Judicial Code, relating to exceptions to sovereign immunity, provides in part:

(a) **Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 [42 Pa.C.S. § 8528] (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising

---

1. The Court's review of an order granting judgment on the pleadings is limited to determining whether the trial court committed an error of law or abused its discretion. *White v. City of Philadelphia,* 712 A.2d 345 (Pa. Cmwlth.1998). In conducting its review, the Court should limit itself to the pleadings themselves and to any documents or exhibits properly attached thereto. *Fox v. Pocono Springs Civic Ass'n, Inc.,* 695 A.2d 484 (Pa. Cmwlth.1997).

2. Section 1774 provides in relevant part that for purposes of the MVFRL only, judgments shall be deemed satisfied when $15,000 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to one person as the result of any one accident or when $30,000 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to two or more persons as the result of any one accident.

out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

> **(1) Vehicle liability.**—The operation of any motor vehicle in the possession or control of a Commonwealth party.

Tarr first asserts that the plain meaning of Section 1787(a)(3) of the MVFRL is to require self-insured entities to provide uninsured motorist benefits of at least $15,000 per person and $30,000 per accident. Lowery and Tarr both argue the holding in *Modesta v. Southeastern Pennsylvania Transportation Authority*, 503 Pa. 437, 469 A.2d 1019 (1983), that self-insured entities are required to provide uninsured motorist benefits. In *Modesta* a passenger was injured when the bus in which she was riding was struck from behind by an uninsured motorist. She was forced to pursue an action in equity to compel the Southeastern Pennsylvania Transportation Authority (SEPTA) to arbitrate her claim for uninsured motorist benefits. The trial court granted SEPTA's preliminary objection and the Superior Court affirmed, but the Supreme Court reversed.

The Supreme Court indicated that SEPTA had always been required either to purchase insurance coverage or to self-

insure, thereby placing it in the same position as a vehicle owner who has purchased liability coverage under provisions of Section 1 of the Act known as the Uninsured Motorists Act, Act of August 14, 1963, P.L. 909, *as amended,* 40 P.S. § 2000, which require uninsured motorist coverage in insurance policies and are similar to Section 1731(a) and (b) of the MVFRL. The court stated that the fact that a vehicle owner was self-insured did not change or detract from the remedial purpose of the Uninsured Motorists Act: "the sole purpose of self-insurance is to relieve self-insurers of the burden of expending their assets on insurance premiums; self-insurance is not a means by which self-insurers may avoid the claims of those individuals for whose protection the insurance laws have been enacted." *Modesta*, 503 Pa. at 441–442, 469 A.2d at 1022. The court overruled a previous decision and held that SEPTA was required to maintain uninsured motorist coverage.

Tarr argues that self-insurance provisions of the MVFRL reflect the same principles. As a self-insured entity, the Port Authority is required by Section 1787(a)(3) to provide uninsured motorist benefits to the limits set forth in Section 1774. The language of Section 1731(b) indicates that the trigger for uninsured motorist coverage is liability on the part of the uninsured motorist, not on the part of the insured or self-insured entity from whom the injured party is seeking benefits. Tarr contends that the Port Authority's interpretation of the interplay between the status of self insurer under the MVFRL and sovereign immunity means that persons such as Tarr are left without recourse.[3] Lowery sug-

---

**3.** The Pennsylvania Financial Responsibility Assigned Claims Plan (Assigned Claims Plan) as amicus curiae in support of Lowery and Tarr explains that it provides limited statutory benefits to certain eligible claimants as a last resort if no other coverage is applicable, but Section 1752(a) of the MVFRL, *as amended,* 75 Pa.C.S. § 1752(a), provides that one of the

gests that the Port Authority's interpretation means that the legislature intended for self-insured governmental entities to maintain uninsured motorist coverage but also intended that no one could ever recover benefits from such coverage. If that had been the legislature's intent, she asserts, it surely would have provided an exception exempting self-insured governmental agencies from the requirement to provide uninsured motorist benefits, which it did not.

Tarr refers to the provisions of Section 8522 of the Judicial Code as quoted above, and she argues that it requires only "injury arising out of a negligent act" but does not state that the negligent act must occur on the part of the Commonwealth agency employee. Here Tarr was a passenger on a Port Authority bus being operated by a Port Authority employee and a negligent act was committed by an uninsured motorist. In the alternative, if it is held that a negligent act must be committed by a Commonwealth party, Tarr argues that in her case, unlike the situation in *Gielarowski*, the Port Authority paid first party

medical benefits on her behalf, and it admitted in correspondence that she had a claim for uninsured motorist benefits. In reviewing judgment on the pleadings, however, the Court may not consider allegations of payments or of admissions that are contained in correspondence outside of the pleadings. *See* n1 above.

In *Gielarowski* a passenger alit from a Port Authority bus and he then fell and suffered injury. This Court affirmed the denial of first party benefits. It stated that a motor vehicle insurance claim against a government agency must satisfy requirements of the immunity statutes and concluded that the circumstances of the passenger's fall on the sidewalk did not come within the vehicle exception in Section 8522(b)(1) because the injury did not occur during the "operation" of the vehicle, as in *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988), where a woman's falling while alighting from a local agency's van was held not to be within "operation" of the motor vehicle as narrowly construed.[4]

requirements to be eligible to recover benefits from the Assigned Claims Plan is that the claimant "(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage."

4. In its amicus brief the Assigned Claims Plan argues that although there is conflict between the MVFRL and the sovereign and governmental immunity provisions of the Judicial Code, this Court has applied both as far as possible, and its interpretations have had consistent results, namely, that immunity requirements are met when a collision occurs. In *City of Philadelphia v. Nationwide Ins. Co.*, 92 Pa.Cmwlth. 20, 498 A.2d 462 (1985), where a collision between a police car and another car caused serious injury to a pedestrian, the City was held to be on the same footing as the other insurer under the insurance statute and the predecessor to the current provisions for

governmental immunity and was liable for payments up to the statutory maximum of $500,000. In *Adeyward-I v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 167 Pa.Cmwlth. 450, 648 A.2d 589 (1994), where a plaintiff was transferring from one bus to another on a street and was struck and injured by an uninsured car, this Court adopted a trial court's opinion upholding an award of $15,000 in uninsured motorist benefits as well as first party benefits against SEPTA. In *Gielarowski*, where a passenger fell after alighting from a bus, the Court affirmed a denial of first party benefits under the MVFRL. In another case a passenger left a bus, walked nearly two blocks and fell while trying to board another bus, and the Court affirmed a denial of first party benefits, distinguishing the factual situation in *Adeyward-I*.

In *Bodnik v. City of Philadelphia*, 135 Pa. Cmwlth. 453, 580 A.2d 1187 (1990), where a pedestrian was talking with a police officer in a parked patrol car and an uninsured car hit

Appellees Port Authority and Raymer first note the applicability of Section 8522 of the Judicial Code to the Port Authority, *Marshall,* and the principle that exceptions to immunity are to be strictly construed because of the clear legislative intent to insulate governments from tort liability. *Kiley.* Without quoting the language at issue, they assert that Section 8522(a) waives sovereign immunity only for damages arising out of a negligent act by a Commonwealth party. The Port Authority and Raymer cite *White by Pearsall v. School District of Philadelphia,* 553 Pa. 214, 718 A.2d 778 (1998), where a student exited a school bus and the bus driver waved for him to cross the street and he was struck by a car that passed the stopped bus. Plaintiff mother filed an action seeking compensatory damages based on alleged negligence of the driver and seeking uninsured motorist benefits. The Supreme Court reinstated summary judgment in favor of the school district, based upon a conclusion that the action of waving to a child to cross was outside the "operation" of the motor vehicle as narrowly construed. Although governmental immunity provisions were involved in *White* rather than sovereign immunity both deal with the same subject matter, and the Supreme Court reads them consistently. *Jones v. Southeastern Pennsylvania Transportation Authority,* 565 Pa. 211, 772 A.2d 435 (2001).

them both and fatally injured the pedestrian, the Court held that the City was liable for first party benefits under Section 1713(a) of the MVFRL, *as amended,* 75 Pa.C.S. § 1713(a), which states in paragraph (4) that for a person not the occupant of a motor vehicle, a policy "on any vehicle involved in the accident" applies. Based on the plain language, the Court rejected the City's argument that the vehicle must cause the accident to be "involved" in it. There was no finding of fault by the City.

The Assigned Claims Plan further explains that the MVFRL provides for three separate coverages: financial responsibility, first party benefits and uninsured motorist coverage. "Financial responsibility" means the ability to respond in damages for liability on account of accidents arising out of the maintenance and use of a motor vehicle in the amount of $15,000 for injury to one person in one accident, $30,000 for injury to two or more persons in one accident and $5000 for damage to property. Section 1702 of the MVFRL, *as amended,* 75 Pa.C.S. § 1702. The Assigned Claims Plan asserts that a claimant must allege negligence by the insured to secure financial responsibility recovery. First party benefits include limited medical benefits, some wage loss benefits, accidental death benefit and funeral benefit, Sections 1711 and 1712, *as amended,* 75 Pa.C.S. §§ 1711 and 1712, and are paid without regard to fault, with the order of priority being first, for a named insured, his or her own policy. Section 1713(a). "Uninsured motorist coverage" provides protection for "persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles." Section 1731(b). Under Section 1733(a), *as amended,* 75 Pa.C.S. § 1733(a), recovery for uninsured or underinsured motorist benefits comes first from a "policy covering a motor vehicle occupied by the injured person at the time of the accident." Thus a plaintiff must allege that she was on the bus, that the Port Authority self-insured the bus and that an uninsured driver (not the Port Authority) was negligent. The Assigned Claims Plan argues that the trial court erroneously substituted the proof required to recover financial responsibility with that required for uninsured motorist benefits.

The Pennsylvania Trial Lawyers Association (PaTLA) in an amicus brief makes some similar arguments. PaTLA also points out that whereas the provision relating to exceptions to governmental immunity, Section 8542 of the Judicial Code, *as amended,* 42 Pa.C.S. § 8542, requires in subsection (a)(2) a showing that "[t]he injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties" with respect to one of the categories listed in subsection (b), Section 8522, relating to sovereign immunity, does not, in that it requires proof only of a "negligent act."

Further in *Gielarowski* this Court affirmed judgment in favor of the Port Authority where a plaintiff sought first party benefits based on his fall after exiting a bus, rejecting the assertion that immunity did not apply and stating that claims must satisfy the requirements of the immunity statutes. The Port Authority and Raymer assert that uninsured motorist coverage is a first party benefit. As for *Modesta*, upon which Lowery and Tarr rely, they contend that it is easily distinguishable because it was decided in 1983, and the application of sovereign immunity to SEPTA was not decided until 1986 in *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986).[5]

### III

The Court finds that the basic position of Lowery and Tarr and their supporting amici is correct. First, in *Modesta* the Supreme Court forcefully explained the rationale for applying uninsured motorist benefits to self-insuring transit authorities. The court observed that the Uninsured Motorists Act related to the same subject and persons as the then-applicable No-fault Motor Vehicle Insurance Act (No-fault Act), Act of July 19, 1974, P.L. 489, *formerly* 40 P.S. §§ 1009.101–1009.701, repealed by Section 8(a) of the Act of February 12, 1984, P.L. 26. Therefore, they should be read in pari materia, and the No-fault Act provided for uninsured motorist coverage for every victim of an uninsured motorist. The court stated: "[I]t makes no sense in terms of any policy of deterrence, retribution or liberal construction of a remedial statute, to deny uninsured motorist coverage to uninsured indi-

viduals who have not caused the accidents which resulted in their injuries, simply because they were occupants of self-insured vehicles." *Modesta*, 503 Pa. at 443, 469 A.2d at 1023. The court recognized that many persons cannot purchase uninsured motorist insurance because they do not own automobiles and must rely on public transportation.

The plaintiffs and amici stress that Section 1787(a)(3) of the MVFRL requires any self-insurer to provide uninsured motorist coverage up to the limits set forth in Section 1774. As the Assigned Claims Plan points out, although other insurers have the option to reject uninsured motorist coverage, *see* Section 1731(a)-(b.3), no such option is available to self-insurers. The plaintiffs and amici argue convincingly that it makes no sense to require self-insured transit systems to provide uninsured motorist coverage and then to interpret other statutes in such a manner that the coverage cannot be claimed. In any case where a collision is caused solely by negligence of an uninsured driver, an injured bus passenger could not recover uninsured motorist benefits that the transit authority is required to make available. Such a result would be absurd, and Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1), states the presumption that the legislature does not intend a result that is absurd, impossible of execution or unreasonable. *See Keim v. Department of Transportation, Bureau of Driver Licensing*, 887 A.2d 834 (Pa. Cmwlth.2005).

A second point is that this case does not involve strict construction of an enumerated exception to immunity, regardless of citation to cases such as *Love* that are

---

5. Amicus State Association for Transit Insurance argues that even for uninsured motorist benefits a plaintiff still must state a cause of action within a recognized exception to immunity, as narrowly construed, and it states initially that the complaints do not allege that the bus was in operation at the time of the accident.

concerned solely with narrow construction of an exception. The complaints here clearly aver that the bus was in motion when a collision occurred with the automobile driven by Goodman. Complaint of Tarr, Paragraphs 7, 10, 11; Complaint of Lowery, Paragraphs 5, 6. There is no question that the bus was in "operation" at the time of the accident and in the possession and control of the Commonwealth party within the meaning of Section 8522(a) of the Judicial Code.

■ The Court is persuaded that a holding in favor of the plaintiffs here would not contravene the holding in *Gielarowski*. One distinction is that this case involves uninsured motorist benefits rather than first party benefits. Despite the Port Authority's assertion, uninsured motorist benefits are not first party benefits. First party benefits are provided by Subchapter B of the MVFRL, 75 Pa.C.S. §§ 1711–1725. Uninsured and underinsured motorist benefits are provided by Subchapter C, 75 Pa.C.S. §§ 1731–1738. For recovery of these benefits, proof of negligence is required. Unlike *Gielarowski*, this case does involve allegations of negligent operation of a motor vehicle. The question here is whether allegations against the uninsured driver only are sufficient to satisfy Section 8522(a).

■ Section 8522(a) waives "sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or [under] a statute creat-ing a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." The exception in Section 8522(b)(1) is for "[t]he operation of any motor vehicle in the possession or control of a Commonwealth party." The Court agrees that this language does not specify that the "negligent act" must be committed by the Commonwealth party. It is the nature of uninsured motorist coverage that recovery requires proof of negligence on the part of someone other than the insured. There is no question that damages for uninsured motorist benefits under the MVFRL would be recoverable against a self-insured private party based on proof of negligence by the uninsured driver alone. The Court therefore holds that sovereign immunity does not bar a claim for uninsured motorist benefits absent an allegation of negligence by the Port Authority, and it has reached the same result in *Paravati v. Port Authority of Allegheny County*, 914 A.2d 946 (Pa.Cmwlth.2006).[6]

The Court concludes that the trial court erred in granting judgment on the pleadings to the Port Authority in the actions filed by Lowery and Tarr seeking uninsured motorist benefits under the MVFRL. The Court shall remand the matter for further proceedings, which will require establishing the number of claims for uninsured motorist coverage filed arising out of that one accident. The order of the trial court is reversed, and this case is remanded for further proceedings consistent with the foregoing opinion.

---

**6.** Lowery and Tarr submit that the trial court failed to recognize that in some cases the Supreme Court has been willing to let actions proceed even when they do not meet the exceptions to immunity, citing *Legal Capital, LLC. v. Medical Professional Liability Catastrophe Loss Fund*, 561 Pa. 336, 750 A.2d 299 (2000), where the court held that sovereign immunity did not bar an assignee from seeking a declaratory judgment to determine the legality of assignments to rights to payment by the fund. The Court need not address this issue, but in any event the present case is not in the nature of an action for a declaratory judgment.

## ORDER

AND NOW, this 29th day of December, 2006, the order of the Court of Common Pleas of Allegheny County granting judgment on the pleadings is reversed, and this matter is remanded to the trial court for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.